United States v. Miller. Mr. Cupsis. Your Honor, approach. Please. May it please the court. I want to address at the beginning here the primary complaint expressed by the defendant in regard to his appeal and that is the testimony of Special Agent Peasley in this particular matter. First of all, at Agent Peasley was asked certain questions in regard to the identification of a license plate which he was able to pull off the getaway vehicle for the bank robbery. Agent Peasley was asked, could you identify the digits? He indicated that yes, I was able to identify all the numbers and letters but for one. He then went through a rather detailed explanation of exactly what was done in order for him to identify that license plate information. Based upon that, the jury heard testimony that Agent Peasley was able to derive a license plate from the getaway vehicle and that that license plate in fact matched the vehicle belonging to Joseph Miller. A motion for new trial was filed and Agent Peasley testified again. At that point in time, Agent Peasley testified that he could not read any of the digits on the license plate and therefore he sent the videotape and the stills taken from the video to HIDTA, High Intensity Drugs Task Force in Crown Point, Indiana, to see if they could clarify or enhance the video to. He said he did not. He was asked who conducted the tests on the video. He indicated that he did not know. He was asked what exactly was it that they did to enhance the video. What technology did he use? What software program did he use? What is it that they did? He said he did not know. He then received information from someone from HIDTA, though he did not know who, that the license plate was in fact a license plate that matched up to a vehicle owned by the defendant or by the appellant, Joseph Miller. Our Judge Moody found that in regard to this particular line of testimony that Agent Peasley did not perjure himself at trial and that this was a somewhat ambiguous statement. The government argues essentially the same effect in its brief here for this matter today. Appellant's contention is that this couldn't be more black and white. At trial, Peasley testifies he himself could read the numbers and explains exactly how they came up with the numbers in regards to color variations and things like that. At the motion for new trial, Peasley acknowledges he couldn't read any of the numbers and indicates he has no idea who did the work at HIDTA, what they did, what technology they employed, or how they came up with the numbers. I believe that this is clearly witness perjury and it's not witness perjury from a confidential informant or a cumulative type witness. It's perjury from the lead agent on this particular case and the significance of the perjury is that had not Agent Peasley testified that he himself was involved in the process as far as identifying the numbers by his eyes, being involved in the process of how they enhanced the video to identify those numbers, it would have been clearly inadmissible under a hearsay. Well now, Miller's girlfriend said the car on the video was his and he admitted that was his car but he wasn't in it. Right. Just to address two things. First of all, Miller's girlfriend did say that she recognized the vehicle to be Miller's car, but we have a situation here where the video is not that crisp. We acknowledge it was that Miller owns a 2008 Ford Explorer. The government contends that the getaway vehicle was a 2008 Ford Explorer. They talk about certain stickers which themselves were not visible but were on the vehicle. They talk about a license plate on the front that had black writing though nobody could read it. But the girlfriend did say the car was his, the car on the video, and Miller said that was his car, notwithstanding the blurry. The girlfriend said that the car was his, however the girlfriend's testimony on many points was inconsistent. She was not the most reliable witness. Peasley's testimony that the license plate matched Miller's car was a slam dunk as far as establishing that the vehicle itself was involved in the robbery and that Miller was the owner. In regard to Miller's testimony, I get to that point as far as the credibility of agent Peasley because once again, this was a situation where the FBI agent took a confession. He did not record the confession. He did not write down the confession. It was essentially his word against Miller's. Our contention here is that Peasley, on three separate occasions, mischaracterized testimony or perjured himself. It was the reliability of Peasley that the jury was looking at and therefore we would contend that the reliability of Peasley or that that should be attacked based upon his three other misrepresentations, two of which occurred during trial, one of which occurred regarding a witness statement prior to trial. And for that reason, this evidence should have been presented to the jury for them to assess whether or not Peasley was in fact a credible witness and whether he should be believed as to this purported confession given by the defendant Miller. And exactly what did he say, Peasley said that Miller told him? Peasley indicated that Miller confessed to the fact that he did not have a gun. There was a 45 minute interview. But again, it's the defendant's contention. And that wasn't written down anywhere? No, no. It was not recorded, audio or video. There was no written statement given. It was basically Peasley's word against Miller's. It was all from Peasley's notes. That was where that statement came from. And our point is that Peasley, on several occasions, perjured himself during the trial. If the jury had known that, they would have had a different assessment as to Peasley's credibility and the confession purportedly given by Miller. The second issue that is a misstatement is the bank account balance. And Peasley indicated incorrectly that he was overdrawn over $730. The actual evidence is on the day in question, he was overdrawn $159. And the government argues that what difference does it make? And it is the contention of the appellant that it goes to a matter of degree. And the government tries to play that off as an insignificant point. But in the government's closing argument, they led first sentence with the fact that Miller was overdrawn $730 and desperate. That was their theme going into their final argument. So obviously the government felt that there was some substantial significance in this false testimony. So we believe, one, we've established that Peasley did perjure himself on two separate occasions. That being the license plate evidence and also the bank account balance. Now this comes down to whether or not the government had knowledge or recklessly disregarded that perjury. In both of these cases, the government had evidence going in which would have established that Peasley's testimony was false and should have been corrected by the government. The government, I mean, the jury should have been apprised that this testimony fact was false. Peasley indicated in his probable cause affidavit in support of the information in paragraph 9 that he sent the information over to HIDTA. The government was on notice of that in their own probable cause affidavit. There was also a 302 statement prepared by Peasley, which was actually number one in the affidavit, indicating that Peasley sent the materials over to HIDTA. So the government was on notice of that, as well as the bank account testimony and should, I believe I'm out of time. Let me ask you this, in the 302 was the statement that Peasley said that he made to him, was it included in a 302? It was in a 302, but it wasn't identified as to who authored the 302. It was actually the first document included in the government's discovery production. But it was a 302 indicating that he had in fact forwarded the videotape to HIDTA in order for them to determine what the license plate, if they could determine a license plate number. He also states that specifically, and that's in a government's appendix, I believe, page 4, which is his probable cause affidavit in support of the information, and he indicates in there that he cleared, that he sent the tape over to HIDTA for review. Now your second argument is an is on direct appeal. If you discuss with your client, he won't be able to raise this as a 2255. We did discuss that, and based upon the fact that a hearing was held on the new trial motion in which attorney Tavides was cross-examined, I discussed it with my client. We felt there was an adequate record established to proceed forward with the ineffective assistance counsel argument at this point in time. Okay, I'm going to save a little bit for rebuttal. Yes, please. Thank you, Mr. Custis. Mr. Holler. Thank you, your honors, and may it please the court. The district court did not abuse its discretion in finding that Mr. Miller had a fair trial in this case and that he was represented by a competent lawyer. I want to start where Judge Williams's first question started, and that's just to frame where we were in the trial already when Agent Peasley testified. Deborah Loggins had testified to witnesses before, and her testimony, she was shown a picture of the car in the parking lot of the business next door and asked by the government, do you recognize anything in the photograph? I recognize the vehicle. What vehicle is it? Why do you recognize it? Because it is in my possession at this current time. Whose car is it? Joseph Miller owns the car. So you recognize that as Joseph Miller's car? Yes, I do. Okay. Mr. Tavides, the defense counsel testified at the hearing, and I think it was apparent to everyone in the courtroom that this was the car was not an issue anymore. The car had been conceded essentially by a very pro-defendant witness to be the car in the parking lot. It was his car, and the question in this trial that was joined was, was he, was the owner of the car the robber of the bank? That was the question that was in this case, and the government was therefore trying to get through the evidence to get to those key points, including the statement that was made to Agent Peasley, as well as all the other information, the cap, the matching coat that was seized, the matching shoes that were seized, all of that information. And as we, as the district court found, the testimony that's at issue in this case may have been ambiguous, but there's no clear statement here that was a clear false, intentionally false statement. And if you look at page 19 of the government's appendix, that's what's being complained about. You know, we played with the video quite a lot. We looked at could we adjust the colors, invert the colors, do anything we can to bring out those numbers. And at the post-trial hearing, Agent Peasley, this is on government appendix 36, says basically that he did do that. I had enhanced it enough where I could see some of the digits. He did that. Haida also did that. That wasn't brought out at the trial. There was a potential, the government essentially conceded, there was a potential confrontation clause issue that could have been raised. But as this court suggested in Webster, it's up to the defense to decide whether they want to raise every potential confrontation clause claim. It's up to them to decide if they want to join issue with this. And defense counsel testified, look, I made a strategic decision in light of what my client had told me, in light of what testimony had already come in, specifically the testimony from Debra Loggins, but his mother's testimony was also unhelpful to him on this point, that I was, the car was, the defense attorney didn't like highlight this. I don't want to make that impression. But the defense attorney wanted to keep the car, we're not going to focus on the car, we're going to focus on the defendant. And so that's where we are at in this case. So the district court correctly found that there was no obvious intentional perjury in this case. And even if the court thought that there was, which it should not, as we pointed this was, it was exposed on cross-examination by Mr. Tavides. You didn't do this yourself, you had somebody else do this. You had these people at HIDA do it. And in fact he used this to his advantage because he said they were supposedly able to enhance this car, but they couldn't enhance this and they couldn't see who this person was. They can't tell you, HIDA can't, this person, who is in that video. You know, the jury has to decide that for themselves. And he made reasonable arguments to the jury that didn't succeed, but that were reasonable and that were effective, certainly under Strickland, as to why his client should be acquitted. So that's what we have in this case, Your Honor. And on the bank account, we have acknowledged that the records were misread and it should have been, and that's an error and we apologize for that, it shouldn't have been made. But I think, you know, if you go through the closing argument that the defendant has put in the brief and you X'd out 700 and put in 159, it's not material. It's not, you know, he was delinquent on his utilities. Yep, he was. He was overdrawn on his checking account. Yep, he was. His girlfriend had just lost her job. Yep, it was right before Christmas. He had no Christmas presents. All those things were true. And so, at the end of the day, whether his debt was 37 or 7,000, it all comes out really the same for materiality purposes as far as this court's review. And certainly the district court, who was there, who did see the trial, who did see how all this played out in context, did not abuse its discretion in concluding otherwise. Your Honor, as far as Judge Williams, your question about the 302, we did include the 302 in the appendix. It's on page 40 of the government's appendix. It was turned over to discovery and it was an exhibit to one of the motions in this case. And that's where it is in the record. Thank you. So you can review that. And again, I think that it's overall consistent. I think Agent Peasley, far from the representations of defense counsel in this case, I think Agent Peasley, if you really look at the records, drove very hard many times in this case to be accurate and to be forthright. And I think that is what the district court found as well. You know, the question about the witness's testimony is also not a fair representation of the record. The defendant has said in the reply brief that the witness recanted about whether the courier looked like the bank robber. And that's just not correct. That's, you know, again also in our appendix. The witness said the courier looks like the bank robber. The witness said the courier looks like the photograph. And that's what it says in the affidavit. That's what we said at the time. And we let people at that time draw the inference, which many people would, that according to the teller, the bank robber looked like the photograph. And in a later meeting, the teller said, don't draw that inference. I'm not making that claim in any way, shape, or form. If pressed to testify, I might even say that the bank robber did not look like the photograph. But she never retreated from her claim that the bank robber looks like the courier and the photograph looks like the courier, right? I mean, I could look like somebody and somebody else could look like somebody else, but you put the three of us in a room and you'd say A doesn't look like C. That's possible. In this case, I think the teller may just have been mistaken. But in any event, there's no evidence of perjury as in regards to that statement either. And we think as well that the defense counsel made a logical inference to say I'm just going to stay away from it all and I'm not going to cross the gamut on that point. So for all those reasons, Your Honor, we think that the district court got this right and correctly found that there was no ineffective assistance of counsel and that there was no perjury, certainly none that was material and that would justify upsetting the verdict in this case. If the court has no further questions, I would rest on our brief and we'd ask that the judgment be affirmed. Thank you, Mr. Helen, Mr. Kupfsch. Your Honor, I just want to address a couple things. In the reply brief, we expanded a little bit of the testimony of Agent Peasley. Again, government says Peasley said he could read some of the numbers. On page four of my brief, at the bottom, questioned they used some technique. However, I was told by Hyda they did not change a photograph. Well, when you say change a photograph, they didn't print out a new photograph, but you couldn't read the numbers from the photograph. That's why you sent it to Hyda, correct? Correct. Again, at trial, he says he could read them. At the motion for new trial, he clearly indicates that he couldn't, nor did he have any idea what the process utilized was. That's as black and white as it gets. Furthermore, the issue regarding the teller's testimony kind of keeps getting misconstrued. I take the quote that was provided by the request for depositions, which deals with that specifically, and that's contained on government's appendix 12. Paragraph, well, it's at the bottom of the page. During defense counsel's interview with the teller, she said she disagreed with the agent's report. Instead, she said that the photograph of the defendant looked familiar because it reminded her of the courier, not because the photograph looked like the bank robber. Peasley indicated in his affidavit that, in fact, this witness testified that the courier looked like the bank robber and the photo of Miller looked like the courier, therefore Miller looked like the bank robber. She was very adamant and very clear that that was not the case. That was another misrepresentation that was put out by Peasley regarding an identification witness. This was during a time that ID was a big issue because the re was perjury. It was material. In regards to the statements as far as the license plate, it was material, one, in that it was the only way that he could have got the testimony in over a hearsay objection. Two, he buttressed his testimony by explaining a process of how he derived it, therefore giving it more credibility, which was false because he testified later he had no idea what was in fact something that could have and would have affected the verdict. In regards to the testimony of Loggins, she was making statement after statement and contradicting herself. Our point is she was not the most credible witness. It was Peasley's testimony that really put the nail in the coffin that that was, in fact, Joseph Miller's vehicle. Thank you. Thank you, Mr. Kupces. Thanks to both counsel. Mr. Kupces, you took this case as an appointed counsel. I did. And you have the additional thanks of the court for accepting that assignment. The case is taken under advisement. The court will proceed to the sixth case.